**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF FLORIDA**
**TALLAHASSEE DIVISION**

DANA'S RAILROAD SUPPLY, *et al.,*

    *Plaintiffs*,

v.                                                                                                  Case No. 4:14-cv-00134-RH-CAS

PAMELA JO BONDI, in her official capacity
as Attorney General of the State of Florida*,*

    *Defendant*.
_____/

**ATTORNEY GENERAL'S MOTION TO DISMISS**
**AND INCORPORATED MEMORANDUM OF LAW**

    Pamela Jo Bondi, in her official capacity as Florida's Attorney General, moves to dismiss Plaintiffs' Complaint (Doc. 1) pursuant to Federal Rule of Civil Procedure 12(b)(6).

    The Complaint challenges a straightforward economic regulation and attempts an end-run around the well-established rational basis standard. Plaintiffs ask this Court to analyze a pricing statute, which bars surcharges but allows discounts, as a "speech code," contrary to well-established law. This Court should dismiss with prejudice because: i) the Complaint fails to state a plausible claim under the First Amendment because the statute implicates no speech rights; ii) even assuming the First Amendment applies, the Complaint fails to state a claim that the statute unconstitutionally regulates commercial speech; and, iii) the Complaint's pre-enforcement vagueness claim fails because Plaintiffs are not chilled from any constitutional conduct, and they fall within the statute's clear proscription.

**BACKGROUND AND FACTS**

A.     <u>Section 501.0117 and the Federal Law It Carries Forward</u>

The law at issue is neither new nor unique to Florida. The Florida Legislature passed Section 501.0117, Florida Statutes ("the Surcharge Statute"), following the expiration of a similar federal law. The federal law, enacted in 1976, allowed merchants to offer discounts for cash payers but barred them from charging credit card users surcharges to account for the cost of accepting credit cards.[1] *See* State Taxation of Depositories Act, Pub. L. No. 94-222, § 3(c)(1), 90 Stat. 197 (1976) (amending 15 U.S.C. § 1666f). Under this law, a retailer could, for example, price a loaf of bread at $1.00 and charge cash payers 95 cents at the register; the merchant could not instead use a price of $0.95 and charge credit card users $1.00. Congress passed the statute to protect consumers. As the Senate Report accompanying a 1981 renewal of the law noted, under the law, "[merchants] cannot implement two-tier pricing systems which deceive or mislead the consumer . . . consumers cannot be lured into an establishment on the basis of the 'low, rock-bottom price' only to find at the cash register that the price will be higher if a credit card is used." S. Rep. 97-23, at 4 (1981), *reprinted in* 1981 U.S.C.C.A.N. 74, 77.

After the renewal, the federal law expired in 1984, and Florida passed the Surcharge Statute, which serves the same goals, a few years later. The Statute provides in its entirety:

> (1)   A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee

---

[1]   The details of credit card transactions can be complex, but essentially merchants incur a number of fees any time they accept a credit card. *See* Allen Rosenfeld, *Point-of-Purchase Bank Card Surcharges: The Economic Impact on Consumers*, NEW AMERICA FOUND. 1 & n.1 (May 2010), http://www.newamerica.net/sites/newamerica.net/files/policydocs/Surcharging_May_2010.pdf.

> for the privilege of using a credit card to make payment. Charges imposed pursuant to approved state or federal tariffs are not considered to be a surcharge, and charges made under such tariffs are exempt from this section. A convenience fee imposed upon a student or family paying tuition, fees, or other student account charges by credit card to a William L. Boyd, IV, Florida resident access grant eligible institution, as defined in s. 1009.89, is not considered to be a surcharge and is exempt from this section if the amount of the convenience fee does not exceed the total cost charged by the credit card company to the institution. The term "credit card" includes those cards for which unpaid balances are payable on demand. This section does not apply to the offering of a discount for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, if the discount is offered to all prospective customers.
> (2)  A person who violates the provisions of subsection (1) is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.

A separate statute provides that state agencies may impose surcharges when they accept credit cards without running afoul of Section 501.0117. § 215.322 (3)(b), Fla. Stat. The Surcharge Statute has been amended only once, in 2010, to add the provision regarding university charges.

Florida passed this statute to protect consumers, as the available legislative history shows. The House Commerce Committee's Staff Analysis, for example, states that the bill was actively supported by the Florida Consumers Federation, a "non-profit statewide consumer lobbying organization representing over 130 organizations and 20,000 individual consumers," in Florida. Fla. H. Comm. on Commerce, HB 448 (1987) Staff Analysis 4 (June 18, 1987) (attached as Exhibit A). The Federation's position was that the bill "assure[d] basic consumer protection" because surcharges "are inflationary, discriminatory, undermine Truth-In Lending Laws, raise usury law issues, create confusion, and impede electronic payment systems." *Id.* The Staff Analysis also reported that an organization called Consumers Against Penalty Surcharges supported the bill and that groups including the Florida Retail Federation and the National Retail Merchant Association opposed the bill, asserting that the proposed statute would actually harm consumers. *Id.* at 4-5.

The legislative history shows Florida's legislature intended to carry forward the goals of the expired federal law. *See id.* at 2 (summarizing lapsed federal law). Indeed, the Analysis noted that several other states had enacted similar legislation since the expiration of the federal law. *See id.* at 4 ("In effect, over 35% of the U.S. population is protected against the imposition of surcharges."). The bill's definition of "surcharge" and "discount," tracked the definitions used to enforce the federal law. *See id.* at 2 (discussing operation of prior federal law); *see also* § 501.0117(1).[2] As with the expired federal law, under the Surcharge Statute, a merchant can price a loaf of bread at $1.00 and charge cash payers 95 cents at the register but cannot use a price of $0.95 and charge credit card users $1.00.[3]

### B.  Plaintiffs' Allegations

For purposes of this Motion, the Attorney General accepts all of Plaintiffs' factual allegations as true. Plaintiffs are a group of four businesses and their individual owners.[4] Plaintiff Dana's Railroad Supply notified customers that it would charge an unspecified, "small additional fee" for credit card transactions but received notice from the Office of the Attorney General that this practice violates the Surcharge Statute. Compl. ¶ 3. Plaintiff Cook's Sportland likewise

---

[2]  At about the same time that Florida enacted the Surcharge Statute, credit-card companies began adding terms to their merchant agreements that prohibited surcharging or discounting. Recent settlements in class action suits have, to some extent, ended those networks' contractual surcharge restrictions. *See In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, No. 05-MD-1720(JG)(JO), 2013 WL 6510737, at *1, 3 (E.D.N.Y Dec. 13, 2013).

[3]  The Statute, by its terms, prohibits only an additional charge "imposed at the time of a sale or lease transaction." § 501.0117(1); *cf. also* § 526.121, Fla. Stat. (prohibiting gas stations from posting different prices for the same grade of gasoline but making an exception for posting separate prices for cash and credit users).

[4]  Plaintiffs filed their Complaint on March 5. Doc. 1. On the same day, nearly identical complaints were filed in Texas and California, challenging similar laws. Each case involves different plaintiffs, but counsel for Plaintiffs in this action serves as lead counsel in those cases as well. *See generally Constitutional Challenges to Credit-Card Surcharge Laws*, GUPTA BECK PLLC, www.guptabeck.com/swipe-fee-surcharge-lawsuit/ (last visited Apr. 28, 2014).

4

charged an unspecified fee and received a similar notice. *Id.* ¶ 16. Plaintiff TM Jewelry charged its customers an "extra fee for credit" (though the amount of the fee is not clear). It too received a notice that this practice violates the Surcharge Statute. *Id.* ¶¶ 7-8. Plaintiff Tallahassee Discount Furniture, rather than impose a flat fee, charged its customers 2% more for using credit, and received notice that this practice is illegal. *Id.* ¶ 12.  The organizational plaintiffs would like to impose surcharges on their customers. Compl. ¶¶ 4, 9, 13, 18.

Each of the natural plaintiffs is the owner of an organizational plaintiff. *See* Compl. ¶¶ 5, 10, 14, 19. However, the Complaint contains no allegation regarding the ownership structure of the organizational entities (*e.g.,* sole proprietorship, close corporation).[5]

## ARGUMENT

### I.    FLORIDA'S SURCHARGE STATUTE DOES NOT IMPLICATE THE FIRST AMENDMENT.

The Complaint contains an extensive and sometimes colorful account of the history of credit card surcharging. Then, in two paragraphs, the Complaint purports to set out a claim that the Surcharge Statute violates Plaintiffs' First Amendment rights. Compl. ¶¶ 54-55. This claim fails because the Statute is a straightforward pricing statute that does not implicate the First Amendment at all.

#### A.    The Surcharge Statute Is Solely an Economic Regulation.

At bottom, the Complaint is simply an attempt to avoid the familiar rational basis standard under which most economic regulation is reviewed. The central conceit of the Complaint is that discounts and surcharges are "identical in every way" except the label used,

---

[5]  This Motion focuses on the merits of Plaintiffs' claims. To the extent the Court does not dismiss all claims with prejudice, it should dismiss the natural Plaintiffs, who have failed to allege any facts showing that they have standing separate from the organizational plaintiffs. *See generally Potthoff v. Morin*, 245 F.3d 710, 716-17 (8th Cir. 2001).

5

Compl. ¶ 24, and that the Surcharge Statute therefore only regulates words and labels. The Complaint is consequently replete with references to "speech codes," either "state-imposed," *id*. ¶ 54, or imposed by credit card companies through merchant agreements, ¶ 45. But credit card discounts and surcharges are *not* identical. Florida, recognizing that the two practices are different, made a choice to regulate pricing.  The law does not regulate speech in any way.

The State, in the exercise of its police power to regulate economic conduct, has provided that one pricing scheme is legal but another is not. As much as Plaintiffs may assert that imposing surcharges is identical to offering discounts and that both are "lawful activity (engaging in dual pricing)," Compl. ¶ 55, Florida has made a legislative judgment that the two activities are different, just as the federal government did when it enacted similar restrictions. *See supra* at 2. Indeed, states and the federal government make these types of determinations as a matter of course. And when the determinations are challenged, they are upheld so long as "there is any reasonably conceivable state of facts that could provide a rational basis for [them]." *Locke v. Shore*, 634 F.3d 1185, 1196 (11th Cir. 2011) (quoting *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993)); *see also Locke v. Shore*, 682 F. Supp. 2d 1283, 1290 (N.D. Fla. 2010) (Hinkle, J.) ("[The challenged statute] may or may not be sound policy, but federal courts do not sit to review the wisdom of state laws or to prohibit state legislatures from adopting laws that are unsound, unnecessary, or even silly, so long as they are not unconstitutional."). This case is not about merchants' speech. The Plaintiffs ran afoul of the Statute not because of any message contained in the signs or notices they allegedly posted, but because each had a pricing practice that included an "additional amount imposed at the time of a sale." The Plaintiffs are free to post signs detailing the cost of credit or, if they were to offer cash discounts, a sign saying that credit card users would pay more. They cannot, however, price their goods to include surcharges.

Courts have long rejected similar attempts to evade the rational basis standard, even where a statute more directly regulates expression. In *Glickman v. Wileman Brothers & Elliot, Inc.*, 521 U.S. 457, 468 (1997), the Court squarely confronted the question of whether a regulation that compelled fruit growers to subsidize generic advertising "raises a First Amendment issue for us to resolve, or rather is simply a question of economic policy for Congress and the Executive to resolve." The Court, emphasizing the need to examine the statutory context and noting that the advertising requirement was part of a broader regulatory scheme, *id.* at 469, 461-62, concluded that the marketing orders were a "species of economic regulation" afforded the same strong presumption of validity as other legislative acts. *Id.* at 477. There are many more examples of rational basis applied to economic statutes governing the prices a merchant may charge, which are more closely related to the Surcharge Statute at issue in this case. *See, e.g.*, *Nebbia v. New York*, 291 U.S. 502, 536-39 (1934) (upholding price controls on milk); *Bama Tomato Co. v. USDA*, 112 F.3d 1542, 1547-48 (11th Cir. 1997) (holding that provision barring licensed agricultural producers from "affiliating" with individuals found to have violated statute was business regulation that did not implicate First Amendment rights). As the Supreme Court recognized in *44 Liquormart, Inc. v. Rhode Island,* "a State's regulation of the sale of goods differs in kind from a State's regulation of accurate information about those goods." 517 U.S. 484, 512 (1996) (plurality op.).

States and the federal government often limit sellers' ability to impose additional charges without implicating the First Amendment. For example, Florida, like many other states, prohibits merchants from engaging in price gouging following a natural disaster. § 501.160, Fla. Stat.; *see also* Emily Bae, Note, *Are Anti-Price Gouging Legislations Effective Against Sellers During Disasters?*, 4 ENTREPRENEURIAL BUS. L.J. 79, 83-92 (2009) (summarizing anti-gouging laws of

7

thirty states). The federal government prohibits debt collectors from collecting any interest, fee, charge, or expense not expressly authorized by agreement. 15 U.S.C. § 1692f(1). And countless statutes regulate the prices merchants may charge and how they may charge them. *See, e.g.*, § 627.062, Fla. Stat. (insurance rates); §§ 501.976(11), 520.02(2), Fla. Stat. (limiting types of fees that may be included in the "cash price" of a vehicle).

Plaintiffs rely heavily on a New York District Court decision, currently on appeal, that struck down a statute similar to the Surcharge Statute, *see* Compl. at 1-2; *id.* ¶ 52-53, but even if that case were persuasive, a decision issued by the First Circuit just days earlier is stronger authority. In *National Association of Tobacco Outlets, Inc. v. City of Providence* ["*Tobacco Outlets*"], 731 F.3d 71 (1st Cir. 2013), the court rejected a First Amendment challenge to a city ordinance prohibiting retailers from providing discounts for tobacco products. As the court explained, a government may restrict retailers from engaging in certain pricing practices and bar them from offering to engage in such practices without implicating the First Amendment at all. *Id.* at 77-78. As the court noted, in *44 Liquormart, Inc.*, eight Justices agreed with the view that while a State may not restrict advertising about *lawful* prices, it can directly regulate the prices merchants charge or how they charge them. *Id.* at 77. Indeed, even before *44 Liquormart*, the Supreme Court carefully distinguished between laws regulating economic decisions and laws regulating expression. As the Court recognized in *FTC v. Superior Court Trial Lawyers Association*, 493 U.S. 411, 431-32 (1990), a rule that would require heightened scrutiny of economic regulation—in that case, the antitrust laws—whenever the conduct had an "expressive component" would "create a gaping hole in the fabric of those laws." Plaintiffs do not even to attempt to allege that the Surcharge Statute fails the rational basis standard, with good reason. If the Court were to apply the standard, the statute would comfortably survive as it is easily

8

justified as a consumer protection measure. *See Locke*, 682 F. Supp. 2d at 1290. The unambiguous intent of the Surcharge Statute was to protect consumers from inflationary, discriminatory, and confusing practices. *See supra* at 2-3. Plaintiffs may believe that the Surcharge Statute does not accomplish these goals—or that it in fact undermines consumer protection, *see, e.g.*, Compl. ¶¶ 28-30—but this is of course irrelevant for purposes of the rational basis standard. *Locke*, 682 F. Supp. 2d at 1290.[6]

### B. Florida's Surcharge Statute Does Not Restrict Expression.

Because it regulates only economic conduct, the Surcharge Statute does not limit Plaintiffs' expression in any way. Plaintiffs have the burden to establish that the First Amendment applies, *see Clark v. Cmty. for Creative Non-Violence,* 468 U.S. 288, 293 n.5 (1984), and they must identify the precise communication at issue, *see CAMP Legal Def. Fund, Inc. v. City of Atlanta*, 451 F.3d 1257, 1282 (11th Cir. 2006). But because the Surcharge Statute regulates no communications at all, Plaintiffs have not met their burden.

In *Rumsfeld v. Forum for Academic and Institutional Rights, Inc.*, 547 U.S. 47, 60 (2006) ["*FAIR*"], the Supreme Court rejected a First Amendment challenge to a statute requiring schools to provide equal access to military recruiters, regardless of the schools' nondiscrimination policies. The Court made it clear that a statute that "neither limits what [regulated entities] may

---

[6] It bears mentioning, however, that many of the policy arguments in the Complaint are likely wrong. *Compare* Compl. ¶ 29 (arguing that swipe fees are highly regressive), *with* Steven Semeraro, *Assessing the Costs & Benefits of Credit Card Rewards: A Response to Who Gains and Who Loses from Credit Card Payments? Theory and Calibrations*, 25 LOY. CONSUMER L. REV. 30, 37, 42 (2012) (arguing that any wealth transfer occurs in the other direction because high-use cardholders, who are disproportionately high income, subsidize low-use cardholders). At the very least, they are the subject of reasonable debate. *Compare* Compl. ¶ 27 (lauding Australia's law allowing surcharges), *with* Richard A. Epstein, *The Regulation of Interchange Fees: Australian Fine-Tuning Gone Awry*, 2005 COLUM. BUS. L. REV. 551, 582-86 (2005) (critiquing Australia's approach).

9

say nor requires them to say anything" does not trigger First Amendment review. *Id.* at 60; *see also id.* ("[The statute] affects what law schools must *do*—afford equal access to military recruiters—not what they may or may not *say*."); *accord Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1300 (11th Cir. 2013). The Court rejected the schools' arguments that the statute did regulate speech by requiring schools to provide recruiting assistance (*e.g.,* send out scheduling emails), finding such speech "plainly incidental" and noting that "it has never been deemed an abridgement of freedom of speech or press to make a course of conduct illegal merely because the conduct was in part initiated, evidence, or carried out by means of language." *FAIR*, 547 U.S. at 62 (quoting *Giboney v. Empire Storage & Ice Co.*, 336 U.S. 490, 502 (1949)); *accord Locke*, 682 F. Supp. at 1291-92 (upholding regulation of interior designers even though designers' practice involved speech with clients).

The *FAIR* Court also addressed the schools' alternative argument that the First Amendment protected their conduct because it was expressive. The Court recognized that some forms of "symbolic speech" may be protected, but noted that it had earlier "rejected the view that 'conduct can be labeled 'speech' whenever the person engaging in the conduct intends thereby to express an idea.'" *FAIR*, 547 U.S. at 65-66 (quoting *United States v. O'Brien*, 391 U.S. 367, 376 (1968)). Conduct is protected only if it is *inherently* expressive, that is if the message is "overwhelmingly apparent." *Id.* at 66 (quoting *Texas v. Johnson*, 491 U.S. 397, 406 (1989) (flag burning is expressive conduct)). The conduct must itself communicate a message, and the fact that explanatory speech is necessary to explain the message is strong evidence that the conduct is not expressive and not protected. *Id.* As the Court recognized, if "combining speech and conduct were enough to create expressive conduct, a regulated party could always transform conduct into 'speech' simply by talking about it." *Id.* An individual may not "express" disapproval of the IRS

simply by refusing to pay his taxes and expect to receive First Amendment protection for his conduct. *See id.*

The Surcharge Statute, like the equal access statute at issue in *FAIR*, regulates what retailers may or may not do—charge an extra price for using a credit card—rather than what they may say. Retailers are free to express their opposition to swipe fees or the credit card industry in general. Indeed, the Surcharge Statute had no impact on the anti-swipe fee campaign lauded in the Complaint, under which 7-Eleven put up signs challenging swipe fees and gathered thousands of signatures. *See* Compl. ¶ 48. As much as the Complaint may insist that the Statute imposes a "speech code," the Statute regulates only what and how retailers may charge. A price is not protected speech. *See Tobacco Outlets*, 731 F.3d at 77.

Nor can imposing surcharges be characterized as expressive conduct. The mere fact of adding surcharges at the register does not convey opposition to credit card swipe fees or any other message, absent some added, explanatory speech. *Cf. FAIR*, 547 U.S. at 66. Plaintiffs may argue that the imposition of surcharges conveys a message about the "true cost of credit," *see* Compl. ¶ 9, but this argument proves too much. Accepting an argument that conduct may be protected expression if it conveys even a tautology would expand *O'Brien* beyond recognition. A milk wholesaler could argue that a price ceiling prohibits him from charging customers an amount that conveys the "true cost" of milk, for example. *Cf. Nebbia*, 291 U.S. 502. The type of conduct at issue in *O'Brien* and *Johnson* is conduct that conveys a distinct message, such as opposition to a war or to a political party. There is no basis for reading these cases to reach purely economic conduct that conveys no message other than the fact of the economic conduct.

Finally, Plaintiffs may point to cases where courts have struck laws restricting businesses' speech *about* prices or fees, as did plaintiffs in the New York litigation. *See, e.g.*,

11

*BellSouth Telecomms., Inc. v. Farris*, 542 F.3d 499 (6th Cir. 2008) (cited in Mem. of Law in Supp. of Pls.' Mot. for Prelim. Inj., *Expressions Hair Design, et al. v. Schneiderman*, 13-cv-03775 (June 17, 2013) ["*Expressions* Prelim. Inj. Mot."], at 25). But in each of these cases, the underlying conduct was legal and the government prohibited only the businesses' efforts to inform the customer about the conduct. *See, e.g.*, *BellSouth*, 542 F.3d at 500-01 (invalidating statute allowing utility to raise prices to pass on tax but prohibiting utility from informing consumers about reason for increase); *accord Locke*, 682 F. Supp. 2d at 1294-96 (invalidating portion of statute that allowed unlicensed individuals to practice residential interior design but barred them from advertising as interior designers). But this type of law "differs in kind" from the regulation at issue here. Because the Surcharge Statute prohibits a pricing practice directly, such cases are inapposite. The statute in no way restricts Plaintiffs' expression.

## II.     Even if the First Amendment Were Held to Apply, the Surcharge Statute Would Be a Valid Restriction of Commercial Speech.

Even if the Court were to construe the Surcharge Statute as regulating speech, the Statute would satisfy the four-part *Central Hudson* test, which applies to content-neutral regulations of commercial speech.[7] Under *Central Hudson*, the Court asks: i) whether the expression concerns lawful activity and is not misleading; ii) whether the asserted government interest is substantial; iii) if the first two prongs are met, whether the regulation directly advances the government

---

[7] The Complaint asserts that the Surcharge Statute is a "content-based" restriction, implying that it should receive heightened scrutiny under *Sorrell v. IMS Health, Inc.,* 131 S. Ct. 2653 (2011). *See* Compl. ¶ 55. But the "principal inquiry in determining whether a restriction on speech is content-neutral is 'whether the government has adopted a regulation of speech because of disagreement with the message it conveys.'" *Bell v. City of Winter Park*, --- F.3d ----, No. 13-11499, 2014 WL 1088346, at *2 n.6 (11th Cir. Mar. 20, 2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)). The underlying message Plaintiffs allegedly seek to convey—informing the "true cost of credit" to consumers—is one with which the State has no issue.

interest; and, iv) whether the regulation is more extensive than necessary to serve that interest. *Cent. Hudson Gas & Elec. Corp. v. Pub. Serv. Comm'n of N.Y.*, 447 U.S. 557, 566 (1980). Plaintiffs' challenge fails at the very first prong.

*1. If the Surcharge Statute Prohibited Speech, It Would Prohibit Speech Related to Illegal Conduct.* Even before *Central Hudson*, the Supreme Court made it clear that speech involving offers to engage in illegal conduct has no social value and is therefore not protected under the First Amendment. In *Pittsburgh Press Co. v. Pittsburgh Commission on Human Relations*, 413 U.S. 376, 388-89 (1973), the Court upheld a local ordinance that banned gender discrimination in employment and banned publication of discriminatory advertisements. Because the underlying conduct was illegal, the newspaper had no First Amendment right to post discriminatory advertisements. *Accord FAIR*, 547 U.S. at 62; *Gould v. The Florida Bar*, 259 F. App'x 208, 210 (11th Cir. 2007) (unpublished) (holding that advertisement by unlicensed lawyer could be restricted as it promoted unlawful practice). More recently, in *Tobacco Outlets*, the First Circuit rejected an argument that even if the pricing restrictions also at issue in the case were not invalid, *see supra* Part I.A, a separate provision that restricted "offers" to engage in discounting was independently a First Amendment violation. 731 F.3d at 78. The court noted that Supreme Court precedent makes it clear that the government has the authority to ban commercial speech related to illegal activity and that offers to engage in illegal transactions are categorically excluded from the protection of the First Amendment. *Id.* (citing *Cent. Hudson,* 447 U.S. at 563-64; *United States v. Williams*, 553 U.S. 285, 297 (2008)).

Here, the Complaint is simply wrong in asserting that any form of two-tier pricing is legal in Florida. *See supra* Part I.A. Florida has made illegal the pricing practice of imposing surcharges on credit card users and, consistent with *Pittsburgh Press, FAIR,* and *Williams*, it

13

could constitutionally ban incidental speech about the practice as well, such as offers to engage in such pricing.

*2. The State's Consumer Protection Interests Are Substantial.* The State has a strong interest in protecting consumers, and that interest has been found sufficiently substantial to support speech regulation. *See generally Illinois ex rel. Madigan v. Telemarketing Assocs.*, Inc., 538 US 600, 613 (2003) (fraud prevention); *see also 44 Liquormart*, 517 U.S. at 502-03 (plurality op.) (recognizing state interest in protecting consumers from commercial harm but holding that aim cannot be achieved by restricting truthful, non-misleading advertising). In *Edenfield v. Fane*, 507 U.S. 761, 769 (1993), the Court found "no question" that an interest in "ensuring the accuracy of commercial information in the marketplace is substantial."

The possibility that consumers will be subject to a bait-and-switch tactic, under which they are lured by the promise of a "low, rock-bottom price" but then charged a higher price at the register, was at the forefront of efforts to regulate the practice. *See supra* at 2-3. Moreover, there is a danger that merchants will do more than pass on the cost of credit to their customers and will instead use surcharges, in a misleading way, to obtain additional profits. *See generally* Semeraro, *supra* note 6, at 83.

Plaintiffs may argue that the fact that the Surcharge Statute covers only credit card surcharges or the fact that it exempts government entities from the prohibition somehow undermines the State's interest. *See Expressions* Prelim. Inj. Mot. at 33-34. But the Legislature found specific harms with the use of surcharges in credit card transactions, and it is not required to regulate every type of fee in order to address that harm. *See United States v. Edge Broad. Co.*, 509 U.S. 418, 434 (1993). Moreover, the potential harms involved with merchants' use of surcharging—including the danger of consumer confusion and the likelihood that merchants will

recoup more than their cost—are not present when municipalities charge a convenience fee. An individual that is legally required to make a payment is not subject to harm like a consumer lured to a store by a "rock-bottom price."

*3. The Surcharge Statute Directly Advances the State's Substantial Interest.* To satisfy the third *Central Hudson* prong, the State must provide something more than "speculation or conjecture" that the identified harms are real and that the restrictions will alleviate those harms "to a material degree." *Borgner v. Brooks*, 284 F.3d 1204, 1211 (11th Cir. 2002) (quoting *Rubin v. Coors Brewing Co.*, 514 U.S. 476, 487 (1995)). The real harms the State has identified all result from the practice of surcharging. The Statute directly prohibits surcharging.

*4. If the Surcharge Statute Restricted Speech, There Would Be a Reasonable Fit Between the Restriction and the Government's Interest.* To establish the final *Central Hudson* prong, the State's "means and ends must be reasonable, but [the test] does not require perfection." *Fane v. Edenfield*, 945 F.2d 1514, 1518 (11th Cir. 1991), *aff'd sub nom. Edenfield*, 507 U.S. 761. If the Surcharge Statute restricted speech, it would be a narrow prohibition on what a merchant can speak to a customer about the price of an item. A merchant is free to inform the customer of its views on the cost of credit, the wisdom of the surcharge restriction, or any other subject. The Surcharge Statute would restrict only the type of communication that leads to consumer confusion, overcharging, and other economic harms that the legislature sought to prevent.[8]

---

[8] If the Court were to construe the Surcharge Statute as regulating expressive conduct, it should apply the slightly different *O'Brien* test. *See generally Curves, LLC v. Spalding Cnty.*, 685 F.3d 1284, 1289 (11th Cir. 2012). The Surcharge Statute would satisfy this test because: i) the State has the authority, under its police powers, to regulate pricing, *see supra* Part I.A; *cf. Curves*, 685 F.3d at 1289 (holding first *O'Brien* prong satisfied because ordinance was valid under county's police power); ii) the Statute furthers an important government interest, *see supra*

**III.     PLAINTIFFS' PRE-ENFORCEMENT VAGUENESS CHALLENGE IS FATALLY DEFICIENT.**

Plaintiffs also seek facial invalidation of the Surcharge Statute on grounds that the statute is vague, but the text of the statute is clear and in any event the conduct in which Plaintiffs seek to engage clearly falls within its proscription.

**A.     Plaintiffs Cannot Bring a Vagueness Challenge Because They Are Chilled Only From Engaging in a Particular Business Practice or Because They Seek To Engage in Conduct Clearly Proscribed By the Surcharge Statute.**

*1. Plaintiffs Are Not Chilled from Engaging in Any Constitutional Activity.* As described above, Plaintiffs fail to state a claim that the Surcharge Statute violates their First Amendment rights, to the extent the First Amendment applies at all. Because the only activity Plaintiffs would be "chilled" from engaging in is a particular business practice rather than any constitutionally protected conduct, they cannot avail themselves of pre-enforcement vagueness review. *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349-50 (11th Cir. 2011) (holding that a vagueness challenge can come only 1) in defense of a criminal charge or 2) when "the litigant is chilled from engaging in constitutionally protected activity"). Plaintiffs are therefore entitled only to a post-deprivation challenge to the statute. *See id.*

*2. Plaintiffs Cannot Bring a Vagueness Claim Because the Statute Unquestionably Applies to Them.* To the extent Plaintiffs do sufficiently allege a First Amendment challenge, however, they are still foreclosed from bringing a vagueness challenge. In a void-for-vagueness challenge, plaintiffs must show that the law is "impermissibly vague in all of its applications."

---

Part II.2; iii) which is unrelated to the suppression of free expression as opposed to pricing decisions, *cf. Wise Enters., Inc. v. Unified Gov't of Athens-Clarke Cnty.*, 217 F.3d 1360, 1364 (11th Cir. 2000) (third *O'Brien* prong satisfied where government's concern deals with secondary effects of expressive conduct); and, iv) which, as noted above, is no greater than necessary because, at most, it would regulate the communication of such pricing, *see also FAIR*, 547 U.S. at 67 (fourth *O'Brien* prong is satisfied if government's interest would be achieved "less effectively absent the regulation").

*Vill. of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982). If the restriction clearly applies to the challenger, the facial challenge fails. *Id.* And the rule that a party engaged in clearly proscribed conduct may not challenge the statute for vagueness "makes no exception for conduct in the form of speech." *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2719 (2010).

Here, there can be no real dispute that the Surcharge Statute covers the activities in which the Plaintiffs have engaged or seek to engage. Each merchant is a "seller or lessor in a sale or lease transaction" and each wishes to impose a surcharge, which the statute defines as "any additional amount imposed at the time of a sale or lease transaction by the seller or lessor that increases the charge to the buyer or lessee for the privilege of using a credit card to make payment." § 501.0117 (1), Fla. Stat.; *see also* Compl. ¶ 4 ("Dana's would like to be able to truthfully tell its customers . . . that it will add a small fee onto the sale if they choose to pay by credit card, and that there will be no fee if they choose to pay with cash or debit."); *accord id.* ¶¶ 7, 12, 16. As in *Humanitarian Law Project*, the "dispositive point here is that the statutory terms are clear in their application to plaintiffs' proposed conduct, which means that plaintiffs' vagueness challenge must fail." 130 S. Ct. at 2720.[9]

### B. The Surcharge Statute Contains Sufficient Detail to Provide Fair Notice of What is Prohibited and to Avoid Discriminatory Enforcement.

Even if Plaintiffs could bring a vagueness challenge, a statute need only provide a person of ordinary intelligence fair notice of what is prohibited and not be "so standardless that it authorizes or encourages seriously discriminatory enforcement." *Williams*, 553 U.S. at 304. A

---

[9] The same result exists whether, as in *Humanitarian Law Project,* the challenger argues only that the statute fails to provide fair notice, *see* 130 S. Ct. at 2720, or whether the challenger alleges as Plaintiffs do, Compl. ¶ 56, that the statute is also so standardless that it authorizes discriminatory enforcement. *See* 130 S. Ct. at 2718-19.

17

more stringent standard applies for a statute that implicates speech rights, but "perfect clarity and precise guidance have never been required even of regulations that restrict expressive activity." *Rock Against Racism*, 491 U.S. at 794. Economic regulation, even regulation involving speech, is subject to a less strict test due to the nature of the entities being regulated. *Vill. of Hoffman Estates*, 455 U.S. at 498.

Plaintiffs' claim that the Surcharge Statute is vague rests, like their First Amendment claim, on a premise that discounting and surcharging are identical means of dual-pricing. *See* Compl. ¶ 56 (alleging that the law turns on "the blurry difference between two ways of describing the same conduct"). But the Complaint itself, as well as the sociological data it relies upon, shows that this is not so. *See id.* ¶¶ 26-27 (noting that consumers react to surcharges and discounts differently and that "[t]he effectiveness of surcharges is why the plaintiffs in this case seek to impose them"). Moreover, as the Eleventh Circuit has stressed, the starting and ending point for a vagueness analysis is the actual text of the statute, not plaintiffs' beliefs. *Indigo Room,* 710 F.3d at 1301-02. The Surcharge Statute, on its face, defines "surcharge" and "credit card" and provides notice that discounts are allowed and surcharges are forbidden. To the extent any term, such as "discount" is undefined, such terms have a clear, ordinary meaning. *See Humanitarian Law Project*, 130 S. Ct. at 2721-22. A person of "common intelligence" would not have to guess at what the Statute does and does not proscribe.

Plaintiffs' allegation that the Surcharge Statute does not contain sufficient standards for enforcement also fails to state a claim. The Supreme Court has made it clear that the types of standards that implicate vagueness concerns are those that turn on subjective judgments rather than objective facts:

> What renders a statute vague is not the possibility that it will sometimes be difficult to determine whether the incriminating fact it establishes has been

> proved; but rather the indeterminacy of precisely what that fact is. Thus, we have struck down statutes that tied criminal culpability to whether the defendant's conduct was "annoying" or "indecent"—wholly subjective judgments without statutory definitions, narrowing context, or settled legal meanings.

*Williams*, 553 U.S. at 306 (citing *Coates v. Cincinnati*, 402 U.S. 611, 614 (1971); *Reno v. Am. Civil Liberties Union*, 521 U.S. 844, 870–871 & n.35 (1997)). Section 501.0117's prohibition on the imposition of a surcharge, which is defined in the statute, does not present a remotely comparable issue. Whether a merchant has imposed surcharges is not a "subjective judgment" on the part of the enforcer; it is an objective question of fact.

Finally, the fact that Plaintiffs press a facial challenge has implications for their vagueness claim. To succeed on such a claim, Plaintiffs must show that the statute is "utterly devoid of a standard of conduct so that it simply has no core and cannot be validly applied to any conduct." *Indigo Room*, 710 F.3d at 1302 (quoting *High Ol' Times, Inc. v. Busbee*, 673 F.2d 1225, 1228 (11th Cir. 1982)). If a person of reasonable intelligence "can derive a core meaning" from the statute, the statute can be applied to conduct within that core, meaning that a valid application is possible and "necessarily preclud[ing] facial invalidity." *Indigo Room*, 710 F.3d at 1302 (quoting *High Ol' Times*, 673 F.2d at 1228). The core meaning of the Surcharge Statute is clear—a merchant cannot impose surcharges on users of credit—and Plaintiffs' facial vagueness claim must fail.

## IV. CONCLUSION

Florida's Surcharge Statute represents the Legislature's policy judgment that consumers are protected if retailers can offer discounts but cannot impose surcharges, and it comfortably satisfies the rational basis standard Plaintiffs have tried to avoid. The Surcharge Statute does not restrict expression, and it is not unconstitutionally vague. This Court should dismiss the Complaint with prejudice.

PAMELA JO BONDI
ATTORNEY GENERAL


*/s/ Osvaldo Vazquez*
Allen Winsor (FBN 016295)
Solicitor General
Osvaldo Vazquez (FBN 070995)
Deputy Solicitor General
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3681
(850) 410-2672 (fax)
allen.winsor@myfloridalegal.com
osvaldo.vazquez@myfloridalegal.com


## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of April, 2014, a copy of the foregoing was served on counsel of record through the Court's CM/ECF Notice of Electronic Filing system.


*/s/ Osvaldo Vazquez*