UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

DANA'S RAILROAD SUPPLY, *et al.,*

     *Plaintiffs*,

v.                                   Case No. 4:14-cv-00134-RH-CAS

PAMELA JO BONDI, in her official capacity
as Attorney General of the State of Florida*,*

     *Defendant*.
_____/

### ATTORNEY GENERAL'S MEMORANDUM IN OPPOSITION TO PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT

Plaintiffs' Motion for Summary Judgment—indeed, Plaintiffs' entire case—is based on the premise that Section 501.0117, Florida's Surcharge Statute, is indistinguishable from a New York statute as interpreted in *Expressions Hair Design v. Schneiderman*, 975 F. Supp. 2d 430 (S.D.N.Y. 2013), a case currently on appeal. This premise is wrong.

As Plaintiffs describe the New York statute, even a merchant who clearly posted two prices—one for cash, one for credit—could violate the law simply by saying to customers that the reason for the difference was an "extra" charge for credit. *See* Pls.' Mem. (Doc. 17) at 36-37. But *Florida's* statute does not "turn on semantics"; it turns on conduct. It may well be that, in New York, a merchant could break the law based only on how it described its pricing. In Florida, the Surcharge Statute applies only if merchants impose an "additional amount . . . *at the time of a sale or lease transaction,*" § 501.0117(1), Fla. Stat. (emphasis added), that is, if they engage in the *conduct* of imposing a surcharge.

Adhering to their view that the Surcharge Statute and the New York statute are identical, Plaintiffs rely heavily on *People v. Fulvio*, 517 N.Y.S.2d 1008 (N.Y. Crim. Ct. 1987), a twenty-seven-year-old, New York state trial court decision construing a different statute, *e.g.*, Pls.' Mem. at 3, 5, 13, 22, 35, 38, hearsay from an interested party about how that statute is enforced, *e.g., id.* at 23, 37, and on *Expressions Hair Design* itself, *e.g., id.* at 2, 23, 27, 31, 34. 35. None of these are sufficient grounds for Plaintiffs to ask a federal court to strike down a Florida statute.

This case boils down to a single issue: whether the Surcharge Statute regulates merchants' pricing conduct, which Plaintiffs recognize does not implicate the First Amendment at all, Pls.' Mem. at 26-27, or whether it regulates speech. The statutory language resolves that issue. Plaintiffs ask this Court to ignore that language and read the Surcharge Statute broadly in order to implicate First Amendment concerns, but this is exactly backwards. *See Locke v. Shore*, 682 F. Supp. 2d 1283, 1289 (N.D. Fla. 2010) (rejecting broad construction that would raise constitutional issues); *accord Skilling v. United States*, 561 U.S. 358, 405-06 (2010).

Plaintiffs doggedly insist that the Surcharge Statute only punishes speech—at one point, they even imply that it imposes a "thought ban," Pls.' Mem. at 36—but Plaintiffs cannot avoid the clear language of the Statute, and both their First Amendment and vagueness claims must fail. In an attempt to cloud the issues further, Plaintiffs have submitted declarations and exhibits that include hearsay, improper opinion testimony, and irrelevant matter regarding other states' statutes. None of these purported facts undermine the Attorney General's showing that the Surcharge Statute regulates conduct rather than speech, that under controlling law, it cannot be found vague, and that it must be upheld because it easily satisfies the rational basis standard. The Court should deny Plaintiffs' Motion for Summary Judgment and grant the Attorney General's re-filed Motion to Dismiss. (Doc. 23).

## BACKGROUND AND COUNTER-STATEMENT OF FACTS

### A.    The Surcharge Statute in Operation

The Attorney General detailed the history of Florida's Surcharge Statute, as well as the similar federal law it carries forward, in the Motion to Dismiss. (Doc. 9). Briefly stated, Congress enacted the federal statute out of a desire to protect consumers and prevent unfair surprise. In Florida, a federation of consumer advocates supported passage of the Surcharge Statute to extend these protections after the federal statute sunset. *Id.* at 3-4.

The statutory text—which appears nowhere in Plaintiffs' summary judgment memorandum—makes clear what the Surcharge Statute does and does not do. The Statute prevents merchants from "impos[ing] a surcharge on [a] buyer or lessee for electing to use a credit card," and defines a surcharge as "any additional amount imposed at the time of a sale or lease transaction by the seller or lessor." § 501.0117(1), Fla. Stat. The Statute provides that merchants may offer "a discount for the purpose of inducing payment by cash, check, or other means not involving the use of a credit card, if the discount is offered to all prospective customers." *Id.*[1]

In practice, therefore, the Surcharge Statute applies only if a merchant: i) imposes an "*additional amount* [to the price] . . . at the time of a sale or lease transaction"; and ii) does so only for those who "elect[] to use a credit card." *See* Mot. to Dismiss at 2, 4 & n.3, 6, 11. Thus, a merchant who refuses to honor the posted price, requiring "at the time of [the] transaction" that credit card users pay an "additional amount" for "electing to use a credit card" violates the Statute, regardless of what it otherwise communicates. A merchant that posts a relatively higher

---

[1]     A separate provision of Florida law requires retailers of consumer commodities, which include most retail goods, to "conspicuously and clearly display the price per package" of a good "in close proximity to the display" of the item. § 501.135(6); (3)(b).

price on the shelf and informs customers that there will be a discount[2] for cash payments engages in conduct expressly allowed by the Statute, even if the merchant tells credit customers that they are paying "more for credit" or that their paying the regular price is effectively paying an "extra fee" or a "surcharge."[3]

### B.   The Complaints Regarding Plaintiffs and the Attorney General's Response

The Attorney General's office processes complaints from Florida citizens regarding potential violations of the Surcharge Statute. Oswald Decl. ¶ 4. Between 2012 and 2013, the office received a complaint about each of the organizational Plaintiffs. *See Id.*; *see also* Docs. 18-21 & Exs. Following receipt of these complaints, the office sent the letters attached to the natural Plaintiffs' declarations. *See* Docs. 18-21 & Exs. The letters, which are nearly identical, informed the recipients that the Attorney General's office received a complaint about their business "related to the imposition of a surcharge when customers pay for a transaction using a credit card," noted that a copy of the Statute was attached, and concluded that "*if*" the business was in fact imposing a surcharge, "as defined in the statute," the business should suspend the practice immediately. *E.g.*, Doc. 18 at 5 (ECF pagination).

---

[2]   The term "discount" is not itself defined in the Statute. The dictionary defines the term as "a reduction from the full amount or value of something, esp[ecially] a price." BLACK'S LAW DICTIONARY 498 (8th ed. 2004). Under Florida law, courts interpreting statutes should rely on accepted definitions in the absence of a statutory definition. *Trinidad v. Fla. Peninsula Ins. Co.*, 121 So. 3d 433, 439 (Fla. 2013).

[3]   Florida's Statute, which narrowly defines the prohibited practice, thus differs from both the federal and New York statutes. The federal law defined a surcharge as "any means" of increasing the regular price for a card user, though a 1981 amendment defined "regular price" to clarify that a merchant could permissibly post two price tags. *See* Pub. L. No. 94-222, § 3(c), 90 Stat. 197, 197 (1976); Pub. L. No. 97-25, § 102, 95 Stat. 144, 144 (1981). New York law provided only that sellers could not "impose a surcharge" on a credit user, without defining "surcharge" or any other term. N.Y. Gen. Bus. Law § 518 (McKinney 2014).

**ARGUMENT**

I.    **PLAINTIFFS FAIL TO ESTABLISH THAT THE FIRST AMENDMENT APPLIES TO THE SURCHARGE STATUTE.**

Plaintiffs have the burden of both identifying the communication at issue and establishing that the First Amendment applies to the statute they seek to have invalidated. *See* Mot. to Dismiss at 9. As the Attorney General has established, Plaintiffs cannot meet that burden because the Statute, by its terms, regulates conduct, not speech. Plaintiffs agree that a law regulating pricing conduct does not implicate the First Amendment at all, *see* Pls.' Mem. at 26-27, but attempt to avoid the application of this principle by arguing that the Surcharge Statute regulates speech and only speech, *see id.* at 27 n.6. Plaintiffs are simply talking past both the Attorney General's prior arguments and the statutory text itself, and their arguments fail.

As the Attorney General has made clear, the Surcharge Statute prohibits specific conduct, defined in the Statute itself. *See, e.g.*, Mot. to Dismiss at 4 & n.3; *see also supra* at 2-3. The fact that the term "surcharge," may have a common meaning, does not mean that a merchant who calls something an extra cost, or even a "surcharge," has violated the Statute, any more than a Miami Dolphins ticket scalper would violate Florida's price gouging statute by asking for an inflated price or even telling buyers that he was "gouging them." *See* Mot. to Dismiss at 7; § 501.160, Fla. Stat. Laws that prohibit bribery, harassment, or fraud restrict acts that have colloquial definitions. But such laws contain elements that define the prohibited act. *E.g., Id.* § 817.034(3). A person may not be prosecuted for conduct that does not satisfy the legal elements of fraud, even if the person's behavior might commonly be understood to be fraudulent, and even if the person says, "I am defrauding you." So too with the Surcharge Statute—merely *calling* a price a surcharge, or informing customers that they are incurring an "extra cost" or paying more for credit, does not *impose* a surcharge within the meaning of the Statute.

Plaintiffs' memorandum ignores the fact that the Statute proscribes a defined, non-speech offense, offering only pronouncements, divorced from any statutory text, about what the Statute regulates, relying almost exclusively on court decisions regarding New York's statutory prohibition on surcharges,[4] and analyzing *that* law's reach. *See, e.g.*, Pls.' Mem. at 2-3, 21-24, 31, 35, 37, 38-39. Plaintiffs go so far as to rely on inadmissible hearsay of a New York assistant attorney general's supposed description of what the New York statute does and does not allow. *Id.* at 23; *see also infra* Part IV. But regardless whether the *Expressions Hair Design* Court, or any other, has interpreted New York law to mean that "[m]erchants may avoid liability under the law by changing what they say rather than what they charge," Pls.' Mem. at 23, the text of Florida's Surcharge Statute cannot support such a reading. The text expressly defines what is forbidden, and the definition embraces only conduct.[5] Plaintiffs make no attempt to answer the Attorney General's previous showing as to what the Statute provides; they simply proceed as if this Court were reviewing New York's statute.[6] This is not enough to establish that the Court should grant Plaintiffs summary judgment and strike down a Florida law.

In this same vein, Plaintiffs try and fail to distinguish the ordinance at issue in *National Association of Tobacco Outlets v. City of Providence* ["*Tobacco Outlets II*"], 731 F.3d 71 (1st Cir. 2013), asserting that the Surcharge Statute, but not the ordinance, allows "differential

---

[4]     Moreover, *Fulvio*, the New York trial court case cited throughout Plaintiffs' memorandum, did not involve any First Amendment claim. *See Fulvio*, 517 N.Y.S.2d at 1009.

[5]     The statutory text provides ready answers to the hypotheticals and examples sprinkled throughout Plaintiffs' memorandum. S*ee* Pls. Mem. at 5-6, 22, 23. Plaintiffs' memorandum also poses a direct question of how a merchant who wants to charge two different prices is "supposed to comply with the no-surcharge law." *Id.* at 37. The statutory text answers this as well. *See supra* at 3-4; *see also, e.g.*, Mot. to Dismiss at 4 & n.3.

[6]     Plaintiffs assert, without citation, that "[t]he Attorney General does not deny that Florida's law is functionally identical" to New York's. Pls.' Mem. at 21. But of course this is not so.

pricing" and regulates only the way that such pricing is labeled. Pls.' Mem. at 27. Even if Plaintiffs' reading of the Statute were correct, applying their logic to the *Tobacco Outlets II* ordinance demonstrates how that case's outcome is irreconcilable with the claim made here. The plaintiffs there could well have argued that Providence made legal "reduced pricing"—a term just as artificial as Plaintiffs' "dual pricing" is here—but made illegal how merchants could "describe" such pricing. A retailer who wanted to communicate the message that it was giving customers a bargain could lawfully sell three packs of cigarettes for $2.00 each, but could not sell two for $3.00 and say that the third would be free. *See* 731 F.3d at 74 n.1. This was so even though the economic reality is precisely the same, *cf.* Pls.' Mem. at 22, even though "reduced pricing" was still legal under the ordinance, *cf. id.* at 28, and even though the regulation arguably "draws the line between prohibited [multi-pack discounts] and permissible [per-pack reductions] based on words and labels, rather than economic realities," *id.* at 27 (quoting *Expressions Hair Design*, 975 F. Supp. 2d at 444) (alterations added). Similarly, a retailer could reduce its price for a customer in a loyalty program, but if it reduced the price because the customer had a coupon, it violated the ordinance and would face a fine of up to $500 and revocation of its license. *See Nat'l Ass'n of Tobacco Outlets, Inc. v. City of Providence* ["*Tobacco Outlets I*"], No. C.A. 12-96-ML, 2012 WL 6128707, at *19 (D.R.I.  Dec. 10, 2012).

Like the Plaintiffs here, the tobacco companies argued that the ordinance "restrict[ed] communication . . . *about the price*" of the good, rather than the pricing itself. *Id.* at *4; *compare* Pls.' Mem. at 27 ("[T]he [Surcharge Statute] regulates only how [merchants] communicate their price to consumers."). The district court, and the First Circuit, brushed this contention aside, recognizing that the ordinance did not implicate any speech rights because it "regulate[d] the

commercial activity itself; it [did] not prohibit any communication regarding that activity."
*Tobacco Outlets I*, 2012 WL 6128707, at *5; *see also Tobacco Outlets II*, 731 F.3d at 77.

A more recent decision, issued by the Southern District of New York, is even more harmful to Plaintiffs' theory. In *National Association of Tobacco Outlets, Inc. v. City of New York* ["*Tobacco Outlets III*"], No. 14-cv-00577, 2014 WL 2766593 (S.D.N.Y. June 18, 2014), the court granted summary judgment to the city, turning aside a challenge to an ordinance that was, if anything, more extensive than the Providence ordinance. Like Providence, New York City bars retailers from accepting coupons or providing multi-pack discounts for cigarettes. *Id.* at *2. However, the city also bars retailers from selling cigarettes for less than the listed price, such as by a one-day sale. *Id.* at *3. Retailers can change the shelf price and "inform[] customers  that the listed price has changed," *id.* (quoting R.C.N.Y. § 13-02(d)(ii)), but they cannot keep the price and sell cigarettes at a discount, which is economically identical.[7] The plaintiffs in that case argued that *Expressions Hair Design*, decided by the same court, mandated that the ordinance be struck down. *See* Pls.' Joint Mem. In Supp. of Mot. For. Summ. J. (excerpts attached as Ex. A), at 6. In an argument nearly indistinguishable from that of the Plaintiffs here, they said: "Nothing in the Ordinance prohibits selling or offering to sell a tobacco product for $11. Instead, a sale or offer becomes illegal under the Ordinance based *only on how the $11 price is described or communicated to consumers.*" *Id.* at 4 (emphasis added). The court held that the New York ordinance did not require First Amendment scrutiny. It concluded that the ordinance "only regulates an economic transaction—the sale of tobacco products below the listed price," and therefore, it "lawfully regulates pricing, not speech." 2014 WL 2766593, at *6, 5.

---

[7]    Violations of the ordinance carry civil penalties, including fines of up to $5000 and revocation or suspension of a license. N.Y.C. Admin. Code § 17-176.1(f).

These opinions reflect a recognition that regulation of pricing does not implicate the First Amendment just because a price must be communicated in some fashion. *Cf. Sorrell v. IMS Health Inc.*, 131 S. Ct. 2653, 2664-65 (2011) (noting that a law that burdens speech incidentally, such as by prohibiting "White Applicants Only" signs, is constitutional). Plaintiffs' theory in this case goes even further. In their view, *any* economic regulation that a regulated party can circumvent in order to accomplish the same ends is a "speech code," because the economic reality being identical, the regulation merely reaches "labels." But the law is replete with distinctions among economically similar behavior. For example, states have long regulated usury, though in some instances states' restrictions on interest rates can be avoided by increasing other charges. *See* Todd J. Zywicki, *Consumer Use and Government Regulation of Title Pledge Lending*, 22 Loy. Consumer L. Rev. 425, 427-33 (2010). Indeed, that is how the practice of charging "points" on mortgages originated. *Id.* at 428. Such laws arguably prevent only the "labeling" of a charge as "interest," but this does not provide every lender with a First Amendment claim.[8] Similarly, the federal antitrust laws were for decades construed to prohibit vertical price fixing but to allow manufacturers to engage in the practice of announcing "suggested prices" and refusing to deal with non-complying retailers, generating an identical economic effect. *See Leegin Creative Leather Prods., Inc. v. PSKS, Inc.*, 551 U.S. 877, 902-03 (2007), *overruling Dr. Miles Med. Co. v. John D. Park & Sons Co.*, 220 U.S. 373 (1911). Expanding the First Amendment to reach such laws distorts the Amendment beyond recognition. It is a clear sign that Plaintiffs' theory is fundamentally flawed.

---

[8]   Plaintiffs make much out of the fact that the Surcharge Statute expressly allows for the offering of a discount, but this does not distinguish the Statute from laws, like usury restrictions, that implicitly allow economically similar conduct. The fact that the Legislature made clear that retailers can offer a discount, rather than remaining silent, no more creates a "speech code" than would an amendment to a usury law that expressly allowed lenders to impose finance charges.

## II.   PLAINTIFFS' CLAIMS WOULD FAIL EVEN IF THE FIRST AMENDMENT APPLIED.

Plaintiffs have also failed to show that, if this Court were to hold that the First Amendment applies, they would be entitled to relief.

At the outset, Plaintiffs fail to acknowledge Eleventh Circuit precedent under which the Surcharge Statute would not be a content-based regulation requiring strict scrutiny. That court has made clear that its "principal inquiry" in determining whether a restriction is content-neutral is whether the government regulates the speech "because of disagreement with the message it conveys." *Bell v. City of Winter Park*, 745 F.3d 1318, 1322 n.6 (11th Cir. 2014) (quoting *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989)); *see also* Mot. to Dismiss at 12 n.7. Plaintiffs fail to show that the Surcharge Statute was motivated by any disagreement with communication of the "true cost of credit." The only available evidence from the legislative history shows that the Statute was motivated by entirely unrelated, consumer protection concerns.[9] Plaintiffs do not argue that the legislative history reveals any other purpose, merely recasting their argument that the effect of the law is to burden their favored speech. *See* Pls.' Mem. at 25. (And their argument is also entirely about the effect of *New York's* law. *Id.* at 21-23.) But that is not the Eleventh Circuit's test. Moreover, the argument fails to recognize the principle, which the Supreme Court affirmed just last week in rejecting a similar argument, that "a facially neutral law does not

---

[9]    Nor does the fact that the Statute carries criminal penalties mean that strict scrutiny is warranted. *Contra* Pls.' Mem. at 20; *see, e.g.*, *United States v. O'Brien*, 391 U.S. 367 (1968).  A violation of the Statute is a second-degree misdemeanor, which can lead to a fine of up to $500 and up to 60 days imprisonment. §§ 501.0117(2); 775.082(4); 775.083(1)(e), Fla. Stat. Plaintiffs assert that the fine is $10,000, *see* Pls.' Mem. at 2, 5, 36, but that is the fine for a second-degree *felony*, § 775.083(1)(b).

become content based simply because it may disproportionately affect speech on certain topics."

*McCullen v. Coakley*, --- U.S. ----, No. 12-1168, 2014 WL 2882079, at *10 (June 26, 2014).[10]

The Statute does not implicate the "fundamental principle that underlies [the Court's] concern about 'content-based speech regulations'"—that the State grants the use of a forum only to speakers whose view it finds acceptable. *City of Renton v. Playtime Theatres, Inc.*, 475 U.S. 41, 48-49 (1986); *see also Sorrell*, 131 S. Ct. at 2663 (noting that the state, based on viewpoint disagreement, prevented pharmaceutical marketers, known as "detailers," from communicating health information, but allowed academics and others to do so).[11] If the Statute triggered the First Amendment, it would thus be analogous to a content-neutral manner restriction, allowing anyone to express any view regarding credit card fees, but restricting their ability to do so by means of imposing a surcharge. *Cf. Bell*, 745 F.3d at 1322-23.

If the Court were to hold that the First Amendment applies, at best the intermediate scrutiny framework from *Central Hudson,* or the *O'Brien* test for evaluating regulation of

---

[10]   In *McCullen*, the Supreme Court applied a standard to determine whether a law "draw[s] content-based distinctions on its face," stating that a law that requires enforcement authorities to examine the content of the message to determine whether a violation has occurred is content-based. *McCullen*, 2014 WL 2882079, at *10. On its face, the Surcharge Statute defines what is prohibited by reference to imposition of an additional charge. Therefore, "[w]hether [merchants] violate the [Statute] 'depends' not 'on what they say,'" but on their pricing; merchants may violate the statute by adding a price, "without displaying a sign or uttering a word." *Id.* (quoting *Holder v. Humanitarian Law Project*, 561 U.S. 1, 27 (2010)).

[11]   Plaintiffs quote *Sorrell*, asserting that "[a] law that 'has the effect of preventing' merchants 'from communicating with [consumers] in an effective and informative manner,' thus hamstringing their 'ability to influence [consumer] decisions,' is one that 'impose[s] a specific, content-based burden on protected speech." Pls.' Mem. at 25 (quoting *Sorrell*, 131 S. Ct. at 2663-64, 70). But this is an incomplete quotation. The full quotation shows that the Court's concern was that the law prohibited "detailers *and only detailers*" from communicating in "an effective and informative manner," demonstrating that it was aimed at certain disfavored speakers and the content of their speech. *See also generally McCullen*, 2014 WL 2882079, at *12; *Solantic, LLC v. City of Neptune Beach*, 410 F.3d 1250, 1263-64 (11th Cir. 2005).

expressive conduct, would apply.[12] The Attorney General has shown that the Statute would

satisfy either. *See* Mot. to Dismiss at 13-15, 15 n.8. Plaintiffs' arguments to the contrary are

again based on a misreading of the Statute.

###### *1. If the Surcharge Statute Addressed Communication, It Would Reach Only Communication Related to Illegal Conduct.* Plaintiffs disregard the statutory text in arguing that

the Surcharge Statute does not regulate speech related to illegal conduct. The Attorney General

does not argue that a state can make speech illegal and then justify the ban based on the speech's

illegality. *Contra* Pls.' Mem. at 29. Instead, as Supreme Court caselaw establishes, the State can

restrict underlying conduct and permissibly restrict speech about such conduct. *See* Mot. to

Dismiss at 13-14; *see also Sorrell*, 131 S. Ct. at 2664-65. Indeed, the *Tobacco Outlets* courts'

holding that the ordinances could constitutionally restrict "offers" to accept or redeem coupons is

further confirmation that Plaintiffs fail to make a First Amendment claim here. There, the

District of Rhode Island acknowledged that such a restriction reached communication, but

concluded that "no constitutional protection [was] applicable" to such offers because the *conduct*

that was the subject of the communications was illegal. *Tobacco Outlets I*, 2012 WL 6128707, at

*7; *accord Tobacco Outlets III*, 2014 WL 2766593, at *7. Far from, "simply chas[ing] [the

City's] tail," Pls.' Mem. at 29, this holding recognizes that if conduct is illegal, incidental

communication about the conduct can be restricted, satisfying *Central Hudson* at prong 1.

---

[12]   If it were construed as a manner restriction, the Statute would have to satisfy a form of
intermediate scrutiny, requiring the law to: i) serve a significant government interest; ii) be
narrowly tailored to achieving those ends; and iii) leave ample alternative avenues for speech.
*Bell*, 745 F.3d at 1322. The Statute would satisfy prongs 1 and 2 of this test for reasons similar to
the reasons it would satisfy *Central Hudson* prongs 2 through 4; the Statute also leaves ample
alternative avenues for speech. *See, e.g.*, Mot. to Dismiss at 6.

*2. The Surcharge Statute Advances a Substantial Consumer Interest.* Responding to an argument the Attorney General has not made, Plaintiffs assert that paternalism cannot serve as a sufficient state interest. Pls.' Mem. at 29. But the Surcharge Statute does not seek to "protect" anyone from any message about the true cost of credit—merchants are free to tell consumers anything they want about the subject. What it does bar is a pricing practice that generated concrete consumer harms, which the Legislature specifically cited in passing the Statute. *See* Mot. to Dismiss at 3-4. Indeed, this practice continues to generate consumer complaints, including complaints about Plaintiffs themselves.

The inescapable fact, which Plaintiffs acknowledge, is that there is a difference between surcharging and discounts. Many consumers in Florida, including Plaintiffs' own customers, have been upset by this pricing practice. *See* Oswald Decl. ¶ 4. The issue is whether the State may take action to address this harm. The Supreme Court, in *Edenfield v. Fane*, 507 U.S. 761, 771 (1993), held that *Central Hudson* requires a showing that "the harms [the government] recites are real and that its restriction will in fact alleviate them to a material degree." Here, Florida, like the federal government and nine other states, appropriately found the risk of consumer confusion, price inflation, and other harms, real and substantial enough to justify a restriction on surcharging.

*3. The Statute Directly Advances the Substantial Consumer Interest and is Narrowly Tailored.* Finally, the Surcharge Statute would satisfy the third and fourth *Central Hudson* factors if that test were to apply. The Statute simply and directly prohibits a specific pricing practice that creates the consumer harm the Legislature identified, and it prohibits only that practice. To the extent it prevents anyone from speaking (such as by communicating to customers how the price is set), such speech is incidental to the pricing. Plaintiffs may feel that a

13

disclosure requirement is better, but the state is not obligated to employ the least restrictive means in order to pass constitutional scrutiny, *see* Mot. to Dismiss at 15, and "the First Amendment does not guarantee a speaker the right to any particular form of expression," *McCullen*, 2014 WL 2882079, at *15.[13] Moreover, a mere disclosure regime would fail to achieve the State's consumer protection interest, *see id.* at *20, because a consumer who learns about the surcharge while at the register—that is, when he or she is all but certain to make the purchase and is less able to comparison shop—will still be subject to the risk of unfair surprise, overcharging, and confusion that the Legislature sought to prevent.

To the extent that there is any doubt about the constitutionality of the Surcharge Statute, the Court should apply the avoidance canon and interpret it narrowly. *Locke*, 682 F. Supp. 2d at 1289. In *Virginia v. American Booksellers Association*, 484 U.S. 383, 397 (1988), the Court noted that, "[i]t has long been a tenet of First Amendment law that in determining a facial challenge to a statute, if it be 'readily susceptible' to a narrowing construction that would make it constitutional, it will be upheld." The Statute is not only readily susceptible to a reading that it reaches conduct only, that is the most natural reading of its express terms. *See supra* at 3-4.

Under a proper, limited reading of the Surcharge Statute, it is clear that it regulates a specific type of economic conduct only and that rational basis review applies. *See Tobacco Outlets I*, 2012 WL 6128707, at *8. Stripped to its essence, Plaintiffs' claim is based on a policy

---

[13]   Plaintiffs also argue that the Statute is "riddled" with exceptions. Pls.' Mem. at 32. The Attorney General has already demonstrated why the Statute's limited exceptions are immaterial. Mot. to Dismiss at 14-15; *see also Sorrell*, 131 S. Ct. at 2668 (noting that even a "coherent policy" can have a few narrow and well-justified exceptions). That a statute has exceptions is relevant only if they undermine the legitimacy of the government's interest, *see, e.g., Rubin v. Coors Brewing Co.*, 514 U.S. 476, 488 (1995), or reveal that the government's motive was content-based, *see Solantic, LLC*, 410 F.3d at 1263-67; *McCullen*, 2014 WL 2882079, at *12-13. Neither factor is present here. *See supra* at 11; Mot. to Dismiss at 14-15.

disagreement with the Statute, which is irrelevant for purposes of rational basis review. *See* Mot. to Dismiss at 9. (And Plaintiffs have not even brought a rational basis challenge.) Plaintiffs' lengthy arguments that the Statute is bad policy or somehow questionable because the credit card industry may have supported its passage[14] should be brought to the Florida Legislature.

### III.   PLAINTIFFS FAIL TO ESTABLISH THAT THE SURCHARGE STATUTE IS UNCONSTITUTIONALLY VAGUE.

Plaintiffs' vagueness claim turns almost entirely on their First Amendment arguments. *See* Pls.' Mem. at 36. The Attorney General has shown that a pre-enforcement claim that a statute is void for vagueness cannot survive, under Eleventh Circuit precedent, without a valid claim that any First Amendment rights are implicated. *See* Mot. to Dismiss at 16. *Bankshot Billiards, Inc. v. City of Ocala*, 634 F.3d 1340, 1349-50 (11th Cir. 2011), which Plaintiffs ignore altogether, makes that clear. *See* Mot. to Dismiss at 16. Because Plaintiffs lack such a claim, that reality controls the outcome here. Even if the Court were to find that Plaintiffs' First Amendment rights are implicated, however, their vagueness claim would still fail.

As an initial matter, it cannot be reasonably disputed that Plaintiffs bring a facial challenge. Plaintiffs argue otherwise, relying on decisions from outside of the Eleventh Circuit. *See* Pls.' Mem. at 35 n.9. (Indeed, Plaintiffs' memorandum cites only a single case from within the Eleventh Circuit for its substance. *See id.* at 36.)  Under Eleventh Circuit precedent, it is the

---

[14]    Plaintiffs' arguments on this point are flawed in several respects. First, they are not only irrelevant, they are incorrect. The legislative history shows that independent consumer groups also supported the Statute's passage. *See* Mot. to Dismiss at 3. Second, they are illogical. Plaintiffs claim that the Legislature was motivated by a pro-credit card industry motivation, *see* Pls.' Mem. at 25, but also that the Legislature was snookered by a "surreptitious[]" astroturf group, *id.* at 30. Both arguments cannot be true. Most fundamentally, Plaintiffs cite no authority holding that the fact that any particular group supported a particular statute—put differently, that the group exercised its own First Amendment rights to promote legislation—should have any bearing on its constitutionality. Such arguments should be rejected out of hand.

remedy a Plaintiff seeks that determines whether a challenge is facial or as-applied. Thus, the fact that Plaintiffs ask the Court to strike down the Statute in its entirety, Amd. Compl. at 26 (Doc. 16), is dispositive. *Am. Fed'n of State, Cnty. & Mun. Emps. Council 79 v. Scott*, 717 F.3d 851, 862 (11th Cir. 2013); *see also Skilling*, 561 U.S. at 424 (Scalia, J., concurring in part and concurring in judgt.). If this Court were to hold that Plaintiffs bring only an as-applied challenge, however, Plaintiffs could at most receive injunctive relief preventing enforcement of the statute *as to them. See Skilling*, 561 U.S. at 424 (op. of Scalia, J.). Further, the facts of Plaintiffs' business practices and the details of their surcharging would be material, precluding the entry of summary judgment in their favor without the Attorney General's having had the opportunity to take discovery on this subject. *See* FED. R. CIV. P. 56(d); *see also* Rule 26(f) Report, at 2 (Doc. 14) (reserving right to take discovery on subjects raised by summary judgment motion).

Regardless of whether this challenge is facial or as-applied, Plaintiffs cannot bring a vagueness challenge if their conduct clearly falls within the terms of the statute. *See* Mot. to Dismiss at 17; *United States v. Esquenazi*, --- F.3d ----, No. 11-15331, 2014 WL 1978613, at *11 (11th Cir. May 16, 2014) (as-applied challenge). Consequently, the Court must examine their conduct first, rather than hypotheticals. Plaintiffs primarily rely on hypotheticals, *see* Pls.' Mem. at 36-37, which is itself a sign that they bring a facial challenge. *See Holder*, 561 U.S. at 19-20. It is also a tacit concession that their actual conduct falls within the clear proscription of the Statute. Plaintiffs do not even attempt to argue that the conduct that they have engaged in, and that they say they plan to engage in, falls outside of the Statute's proscription.[15]

---

[15] Plaintiffs assert that the Surcharge Statute imposes criminal penalties and that it embraces speech, but the principles outlined above apply in such an instance. *See generally Holder*, 561 U.S. at 18-25. Plaintiffs also argue that the lack of an explicit mens rea requirement in the Surcharge Statute creates a "trap." Pls.' Mem. at 36. But the rule in Florida is that knowledge is

Because they bring a facial challenge, Plaintiffs must establish that the Statute is vague in *all* of its applications. *Ala. Educ. Ass'n. v. State Superintendent of Educ.*, 746 F.3d 1135, 1139-40 (11th Cir. 2014); *Holder*, 561 U.S. at 20. The fact that Plaintiffs' own conduct falls within the Statute's proscription, of course, precludes such a conclusion. Even if it did not, the fact that the Statute has a clear statutory definition means, at minimum, that there are applications of the statute that would not be constitutionally vague—a merchant who has one shelf price, and later imposes an additional charge for credit card users only, indisputably violates the Statute.

In short, "[a]bsent from [Plaintiffs'] contentions . . . are challenges to the actual text of the [Statute]." *The Indigo Room, Inc. v. City of Fort Myers*, 710 F.3d 1294, 1302 (11th Cir. 2013). But to state a vagueness claim, the statutory language must itself be vague. *Id.* Plaintiffs attempt to bolster their argument by presenting alleged facts showing that they did not themselves understand the law. *See* Pls.' Mem. at 36. But it is the Court that determines the legal question of whether a statute cannot be understood. *See United States v. Nelson*, 712 F.3d 498, 508 (11th Cir. 2013). Plaintiffs cannot escape the fact that "surcharge" is defined in the statute, and that "discount" has an ordinary, common-sense meaning. *See* Mot. to Dismiss at 18. Nothing Plaintiffs have submitted into the record can change this reality.

## IV.   PLAINTIFFS' DECLARATIONS CONTAIN INADMISSIBLE EVIDENCE.

Plaintiffs' claims fail even taking their purported facts at face value. But this Court should not accept the facts in the declarations accompanying Plaintiffs' motion, each of which is deficient.

---

the required mens rea for laws that, like the Surcharge Statute, do not explicitly provide for strict liability. *State v. Giorgetti*, 868 So. 2d 512, 515-16 (Fla. 2004). This fact further undermines Plaintiffs' vagueness claim. *See Posters 'N' Things, Ltd. v. United States*, 511 U.S. 513, 523-25 (1994) (implying a knowledge requirement to a statute and holding that, with that implied requirement, the statute provided ample notice and was not unconstitutionally vague).

To constitute competent evidence for purposes of summary judgment, a declaration must contain material that would be admissible evidence at trial. *See Macuba v. Deboer*, 193 F.3d 1316, 1322-23 (11th Cir. 1999); FED. R. CIV. P. 56(c)(2). Under this standard, a witness's statement about whether a customer is confused, *see* Palmer Decl. ¶ 6, or about what a customer's preference is, *see* Ballard Decl. ¶ 7, are not admissible evidence. Plaintiffs' declarations also contain opinions about what the law provides, *see, e.g.*, Palmer Decl. ¶ 5, but that is not a proper subject for witness testimony. *See, e.g.*, *Durkin v. Platz*, 920 F. Supp. 2d 1316, 1332-33 (N.D. Ga. 2013). The Court should not accept Plaintiffs' opinions as evidence.

The more serious issues arise in the declaration of Plaintiffs' counsel. The declaration attaches two documents that contain pure hearsay—a 1987 memorandum from a public relations firm and a declaration from Michael Parisi, submitted in another case and addressing a different law.[16] Both should be disregarded. Mr. Parisi, who was an interested party in the *Expressions Hair Design* litigation, *see* Gupta Decl. Ex. D ¶¶ 6-7, has not made a separate declaration in this action, and his document is not admissible evidence here. *See United States v. Jones*, 29 F.3d 1549, 1553 (11th Cir. 1994) (noting that a court may take judicial notice of a document filed in another court, but not for the truth of the matters asserted in the other litigation); *id.* (holding that a court erred in taking notice of facts in another court's order for summary judgment purposes). Worse, his declaration itself contains hearsay, purporting to detail the contents of a conversation Mr. Parisi had, in 2009, with someone from the New York Attorney General's Office about New York's statute. Gupta Decl. Ex. D ¶ 8. Mr. Parisi's declaration concludes with his own legal opinions about that New York statute. *Id.* ¶¶ 10-11. This declaration has no relevance to the

---

[16]    The declaration also attaches published, out-of-circuit opinions, Gupta Decl. Exs. A, B, C, as well as irrelevant material such as legislative history from other states, *id.* Exs. F, H, I.

constitutionality of Florida's Surcharge Statute. To the extent the Court concludes differently, it should nevertheless refuse to consider the declaration.

## V.    CONCLUSION

As the Attorney General's Motion to Dismiss demonstrated, Plaintiffs cannot show that the Surcharge Statute restricts any expression or that it is unconstitutionally vague. Plaintiffs' Motion for Summary Judgment is based on a misreading of the Statute, and nothing in the factual materials Plaintiffs have submitted undermines the Attorney General's earlier showing. This Court should deny Plaintiffs' motion.

Respectfully submitted,

PAMELA JO BONDI
ATTORNEY GENERAL


*/s/ Osvaldo Vazquez*
Allen Winsor (FBN 016295)
Solicitor General
Osvaldo Vazquez (FBN 070995)
Deputy Solicitor General
Office of the Attorney General
The Capitol, Pl-01
Tallahassee, Florida 32399-1050
(850) 414-3681
(850) 410-2672 (fax)
allen.winsor@myfloridalegal.com
osvaldo.vazquez@myfloridalegal.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 2nd day of July, 2014, a copy of the foregoing was served on counsel of record through the Court's CM/ECF Notice of Electronic Filing system.

/s/ *Osvaldo Vazquez*