IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION


DANA'S RAILROAD SUPPLY et al.,

    Plaintiffs,

v.                                          CASE NO. 4:14cv134-RH/CAS

PAMELA JO BONDI,

    Defendant.

_____/


**ORDER GRANTING SUMMARY JUDGMENT**

This is a constitutional challenge to a Florida statute governing cash and credit-card sales. This order holds the statute constitutional.

Florida law allows a merchant to exact a higher price from a customer who pays with a credit card than from a customer who pays with cash. A merchant's decision to do this may make economic sense: the merchant must pay a fee to a credit-card issuer and thus, to net the same amount, must obtain a higher price from a customer who pays with a credit card.

Case No. 4:14cv134-RH/CAS

Florida Statutes § 501.0117 restricts the manner in which a merchant may achieve this result. The merchant may give a discount for paying with cash, but the merchant may not exact a surcharge for paying with a credit card. This is the law even though the difference between a cash discount and a credit-card surcharge makes no difference in the price a customer must pay when using either cash or a card; it is a matter of semantics, not economics.

In this case the plaintiffs assert that § 501.0117 is unconstitutional. The plaintiffs are four merchants and their individual owners: Dana's Railroad Supply and owner Dana Jackson; TM Jewelry LCC and owner Tiffany Ballard; Tallahassee Discount Furniture and owner Duana Palmer; and Cook's Sportland and owner Eric Cook. The sole defendant is the Florida Attorney General in her official capacity. The plaintiffs have moved for summary judgment. The Attorney General has moved to dismiss. Because the statute is within the Florida Legislature's broad discretion in regulating economic affairs, this order holds the statute constitutional.

The challenged statute provides in relevant part:

A seller or lessor in a sales or lease transaction may not impose a surcharge on the buyer or lessee for electing to use a credit card in lieu of payment by cash, check, or similar means, if the seller or lessor accepts payment by credit card. A surcharge is any additional amount imposed at the time of a sale or lease transaction by the seller or lessor

      that increases the charge to the buyer or lessee for the privilege of
      using a credit card to make payment.

Fla. Stat. § 501.0117 (2013). There are exceptions—not at issue here—for amounts payable under tariffs, for certain tuition and similar payments by students, and for payments to state agencies. *Id.*

    The effect of the statute can be illustrated with a hypothetical example. If a merchant decides to net $95 from the sale of a product and must pay a 5% fee when a customer pays with a credit card, the merchant will charge $100 to a customer who pays with a credit card but will charge $95 to a customer who pays with cash. Under § 501.0117, the merchant must list the price as $100, and the merchant can simultaneously note the 5% discount for cash. The merchant cannot list the price as $95, with a $5 surcharge for paying with a credit card.

    A statute of this kind will withstand constitutional challenge if the statute has a rational basis, that is, if the statute is rationally related to a legitimate state interest. *See, e.g.*, *FCC v. Beach Commc'ns, Inc.*, 508 U.S. 307, 313 (1993). It is not a court's function "to judge the wisdom, fairness, or logic of legislative choices." *Id.* Here the challenged statute has a rational basis.

    First, the prohibited practice of initially communicating only the lower price—the cash price—entails at least a small measure of bait and switch. A consumer who decides to buy a product for $95 may be reluctant to change course

upon learning that, because the customer will pay with a credit card, the actual price will be $100.  This is hardly fraud; with diligence, the customer can figure it out from the start, and in any event the customer will know the facts before consummating the transaction.  But ensuring that the customer knows the facts before initially deciding to make the purchase is a legitimate legislative goal.

Second, even if not coerced or unduly influenced, a customer who is told the price is $95 may be displeased to learn that the price is actually $100.  Preventing unpleasant surprises is a legitimate legislative goal, both because it makes for happier customers—a legitimate end in itself—and because happier customers help drive a stronger economy.  The effect is surely not large, but a reasonable legislator could believe it worth the effort.

Third, even without this statute, an honest merchant concerned with the best interests of its customers might choose, as a matter of fairness and full disclosure, to list the higher price, exactly as the statute requires.  A reasonable legislator could decide that the honest merchant ought not be at a competitive disadvantage to a different merchant who elects to list the lower price.  Requiring prices to be listed in the same way, thus allowing consumers to make quicker and more accurate comparisons, is a legitimate legislative purpose.

None of these assertions is compelling. They might not even be persuasive. But the question whether they are persuasive is for the legislature, not the courts. The assertions are sufficient to render § 501.0117 constitutional.

In reaching this conclusion, I have not overlooked the plaintiffs' effort to make this a First Amendment case. Restrictions on pricing are economic measures subject only to rational-basis scrutiny. *See, e.g.*, *Glickman v. Wileman Bros. & Elliott, Inc.*, 521 U.S. 457, 477 (1997) ("[W]hat we are reviewing is a species of economic regulation that should enjoy the same strong presumption of validity that we accord to other policy judgments made by Congress."). This statute is no more a First Amendment violation than are the Truth-in-Lending Act, which restricts how a lender can pitch its interest rates, and the Fair Debt Collection Practices Act, which restricts how a creditor can present its claim for repayment. A whole host of statutes impose similar restrictions on the relationships between businesses and their customers, and many implicate communications. Under the applicable standard of review—the rational-basis test—this statute is constitutional. And if this were viewed as a restriction on commercial speech, the outcome would be the same; this statute passes muster under the commercial-speech standards imposed in cases like *Central Hudson Gas & Electric Corp. v. Public Service Commission of New York*, 447 U.S. 557 (1980).

Nor have I overlooked the plaintiffs' assertion that the statute is impermissibly vague. It is not. The core of the statute is clear, and it clearly applies to the plaintiffs' pricing of their products.

For these reasons,

IT IS ORDERED:

1. The plaintiffs' summary-judgment motion, ECF No. 17, is DENIED.

2. The defendant's motion to dismiss, ECF No. 23, is GRANTED.

3. The clerk must enter judgment stating, "The plaintiffs' claims are dismissed with prejudice."

4. The clerk must close the file.

SO ORDERED on September 2, 2014.

                     s/Robert L. Hinkle
                     United States District Judge